## MARANTZ v. WEISBERG. *
### No. 12368.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 25, 1930.

Rehearing Denied Nov. 22, 1930.

506

Bullington, Boone, Humphrey & King, E. T. Duff, and Bunnenberg & Nelson, all of Wichita Falls, for plaintiff in error.

Cox, Fulton & Fruechte, of Wichita Falls, for defendant in error.

DUNKLIN, J.

The record in this case shows that on or about August 28, 1928, N. Marantz and Charles Weisberg entered into a partnership to operate a bakery in the town of Wichita Falls, known as the Marantz Bakery. Marantz was the owner of the building in which the business was to be conducted and for the use of that part of the same in which the business was to be carried on the partnership firm was to pay him a rental of $250 a month. It was further agreed between the parties that Marantz was to furnish a certain amount of capital for the equipment of the place of business, with oven, showcases, tables, machinery, and other furnishings necessary for the conduct of the business. Weisberg did not furnish any capital, but he was an expert journeyman baker, and he agreed to furnish his services as such, and that a reasonable allowance should be made for such services, with the further agreement that he should be permitted to draw from the funds of the partnership $20 a week to cover his living expenses, the balance of his wages to be left as a part of the assets of the firm until the same equaled the amount of cash advanced and put into the business by Marantz, after which time the profits of the business over and above

·all expenses were to be divided share and share alike between the parties. The partnership continued for 38 weeks, terminating on May 11, 1929 by Weisberg's withdrawal therefrom.

Weisberg then instituted this suit against Marantz to rescind the partnership agreement and as to defendant to be released of all partnership obligations; and to recover damages, all upon ·allegations that he was induced to enter into the partnership by fraudulent misrepresentations made to him by Marantz. He alleged that his services as a journeyman baker during the 38 weeks he worked for the firm was reasonably worth $75 a week, and he claimed damages at the rate of $55 a week, that being the balance left after crediting the sum of $20 a week drawn by him from the partnership while he was at work.

It was alleged that, in order to induce the plaintiff .to enter into the partnership agreement, the defendant represented to him that the price of $250 a month which he proposed to charge the partnership for the space used as a bakery was a reasonable and fair price; and, further, that the Marantz Grocery and Busy Bee Store, both of which were owned and operated by the defendant, could and would purchase from the Marantz Bakery, the proposed partnership firm, $125 worth of bakery products a day; that both of said representations were false and known to the defendant to be false at the time he made them; that the plaintiff relied upon them as being true and was induced thereby to enter into the partnership, and that he did not discover their falsity until at or about the time he withdrew from the business.

The truth of those allegations was put in issue by defendant's general denial, and he also pleaded specially that the parties did enter into the business to be known as the Marantz Bakery; that, in order to raise the working capital, they borrowed from the Wichita Falls Bank & Trust Company the sum of $2,500 upon a promissory note executed by both; that according to the partnership agreement the two partners were to share equally in the profits over and above the expenses; that later when plaintiff withdrew from the partnership the defendant was compelled to pay the principal of said note, the accrued interest having theretofore been paid by the partnership; that it became necessary to buy certain equipment and fixtures for the bakery which cost $1,417.59, and to incur a further indebtedness of $738.77 as expense for installing the same; that said fixtures and equipment were worthless at the time the partnership was dissolved; that during the partnership relation each of the partners drew from the business the sum of $740; and by counterclaim defendant sought a recovery against the plaintiff of one-half of all the sums mentioned above, and to have a lien established against the partnership assets for the several amounts which plaintiff owed him on the advancements mentioned above.

In answer to special issues, the jury found that the defendant did not represent to plaintiff that the two stores owned by defendant would handle products of the bakery business to the amount of $125 a day, as alleged in plaintiff's petition. They further found that the defendant did represent to the plaintiff that $250 a month was a fair and reasonable rental price for the space in his store as used by the bakery, and that plaintiff relied on that representation as being true, but that defendant 'did not know the representation to be untrue at the time he made it. It was further found that $250 a month was an unfair and unreasonable rental for the space so used by the bakery; and that the reasonable weekly salary for an expert journeyman baker was $42 for six days' work, and $56 for seven days' work. There were further findings that, during the time the Marantz Bakery was in business, it operated at a loss of $2,027, and that it now owes to the defendant· $4,140.30.

There was a further finding that the Marantz Bakery does not owe the plaintiff Weisberg any sum of money.

Upon the verdict so returned, a judgment was rendered in plaintiff's favor for the sum of $856, and denying the defendant any relief on his cross-action. From that judgment the defendant has prosecuted this writ of error.

It thus appears that only one of the alleged misrepresentations relied on by the plaintiff was proven and that consisted of the statement made by defendant that the reasonable rental value of the space in the defendant's store occupied by the bakery was $250 a month. In the first place, there is a familiar rule that ordinarily a representation of market value of a commodity is merely an opinion which cannot be made the basis of a recovery for fraud and deceit, although, as said in 12 Ruling Case Law, pp. 379–380, such statements may amount to fraud if the party making them has special knowledge upon the subject of which the other is excusably ignorant. But if the opinion as to market value of property or other commodity is expressed in an honest belief in its truth, and if the complaining party is free to investigate for himself, and such an investigation can be presently made, and will definitely disclose the falsity of the opinion so given, then such opinion cannot be relied on as a basis for rescission of the transaction, on the ground of fraud. 12 R. C. L. pages 381–382. 1 Black on Rescission & Cancellation, §§ 76 and 77. Plaintiff's own testimony shows that before entering into the partnership agreement he could have presently and readily informed himself from other sources as to the rental value of the premises, and he gives no reasonable excuse for failing to make such an investigation. The fact that he was practical-

ly a stranger in Wichita Falls at the time, and unacquainted with such values, made it all the more incumbent upon him to investigate the matter for himself; and especially so, since, according to allegations in his petition, he questioned the reasonableness of the charge of $250 a month for rent at the time defendant represented that to be a reasonable sum. For that reason alone, plaintiff showed no right of recovery on his allegations of fraudulent misrepresentation of the value of rental of the place in which the bakery business was conducted, particularly in view of the fact, as found by the jury, that the representation of such value by defendant was not made with fraudulent intent.

It is to be noted further that, according to allegations in plaintiff's petition and in one and the same count, the misrepresentation of rental value of the property jointly with the alleged misrepresentation that the Marantz Grocery and Busy Bee Store could and would purchase from the proposed partnership firm $125 worth of bakery products a day induced him to enter into the partnership agreement, and it appears from his petition that the latter alleged representation was the controlling inducement for his agreement to the partnership venture; as shown by the following allegations in his petition: "This plaintiff further says that if the representations as made by the defendant had been true and his said two stores had purchased the amount of bakery products as represented by the defendant that the total sales for said two stores during the thirty eight weeks that he handled said business would have amounted to approximately Forty Thousand ($40,000.00) dollars; and this plaintiff says that said business as established could and would have made fifty per cent profit on said gross business or a gross profit of twenty thousand dollars ($20,-000.00) during said time and a net profit of at least ten thousand ($10,000.00) dollars."

As shown above, the jury found that defendant did not make the alleged representation as to the amount of business to be expected from the other two concerns, and there was no finding that but for the other misrepresentation of rental value plaintiff would not have entered into the partnership agreement.

It is a familiar rule that ordinarily, where several acts of negligence are relied on as grounds of recovery for an injury, proof of any one will support a judgment if the proof further shows that that act was the proximate cause of the injury. However, in 45 Corpus Juris, page 1129, the following is said, after noting that general rule: "But on the other hand it has been held that, where the several acts are averred conjunctively, or pleaded as interdependent or concurring causes of the injury, all of the several acts must be proved; and proof of a single act is not sufficient. In any event, all of the several acts or omissions alleged must be proved where it clearly appears that the pleading proceeds on the theory that they all combined caused the injury, as where the injury is alleged to be the result of several acts of negligence, no one of which is charged to have caused it alone, or where the several acts of negligence are alleged as being jointly the proximate cause of the injury, or where the several grounds of negligence charged are so related one to the other as to show that the injury complained of was the result of the negligent acts combined." And many decisions are cited to support that text.

The principle upon which the announcement quoted rests is that a party is bound by allegations in his petition and he is not entitled to a recovery on a theory different from what is there presented. That principle applies more strongly in this case than in the ordinary suit based on negligence, in that the representations charged to the defendant here were contractual in their nature and were alleged by plaintiff as the primary consideration which induced him to enter into the contract of partnership; and, according to his pleading, the two representations, taken together, induced him to enter into the partnership agreement, with no allegation that he was led to make that decision by either of those representations considered separately from the other. In other words, by his pleadings he undertook to show what operated upon his mind at the time; and proof of one only of those representations was a variance with his pleadings by which he was bound, irrespective of evidence and a finding by the jury to the contrary. Furthermore, his suit for rescission and cancellation was a proceeding in equity, and therefore he was required to make a strict showing for that relief; and no right to recover damages arising until rescission be first accomplished.

The following is quoted from 2 Black on Rescission and Cancellation, § 536: "One possessing the right to rescind a contract on the ground of fraud, mistake, or other sufficient cause, and desiring to exercise such right, must not be guilty of any unreasonable or unnecessary delay in the assertion of his purpose and in taking steps to make it effective, or he will be denied relief in equity on the ground that such delay is tantamount to a waiver of his objections to the contract, or is a manifestation of his election to affirm it rather than to repudiate it. In order to escape the imputation of laches in this matter, it is necessary for him (according to the various expressions used in the decisions) to act 'promptly,' 'with reasonable promptness,' 'with due diligence,' or at least 'within a reasonable time' after discovering the facts on which his claim to rescind is based."

And in section 547, after stating that what would be a reasonable time within which such party is required to act is usually a question for determination by the jury, if the matter is in dispute, the following was said: "But on the other hand, where there is no dispute as to the facts, the question whether or not the rescinding party acted with due promptness, or within a reasonable time, is one of law for the decision of the court. Further, when the actual lapse of time is established or not disputed, it may be so short or so long that the court will be able to declare it to be reasonable or unreasonable, as the case may be; as a matter of law. And if it appears that the delay was so unreasonably long that the court can pronounce it excessive as a matter of law, the jury may be peremptorily instructed to that effect. Such a decision of the question by the court is warranted where it can be said that, under no circumstances appearing in the evidence, would the jury be justified in finding that the rescission was claimed within a reasonable time, where the delay was so long that no question as to its reasonableness could arise as to which fair-minded men might differ, where the delay was 'palpably' unreasonable, where the delay was for such a period of time as to be unquestionably without cause or excuse, and where there is no evidence whatever to show that so long a delay was necessary to the rescinding party." See, also, Dashiell v. Christian (Tex. Civ. App.) 152 S. W. 1112; Kennedy v. Bender (Tex. Civ. App.) 140 S. W. 491; City National Bank v. Merchants' & Planters' National Bank (Tex. Civ. App.) 105 S. W. 338; Cooper v. Lee, 1 Tex. Civ. App. 9, 21 S. W. 998; 1 Black on Rescission and Cancellation, § 113.

As appears from plaintiff's petition in this case, 38 weeks—some nine months—elapsed after he entered into the partnership agreement, and during all of that period he took part in the conduct of the business, and necessarily, in the course of the business discovered that the two other concerns were not purchasing bakery products in the amount he claimed the defendant represented they would do; also knowing the amount of rental that was being paid by the partnership firm, and which rental, according to allegations in his petition, was reduced to $225 a month during that period. While he alleged in his petition that he did not discover the falsity of the alleged representation until the end of the 38 weeks, yet there was no reasonable excuse alleged in his petition for his failure so to do. Clearly, his alleged activities in the prosecution of the business would not be a sufficient excuse. And in the absence of a better showing of excuse for his failure to sooner repudiate the partnership agreement, his petition was insufficient on its face to show any right of rescission of

partnership agreement, since his delay in repudiating was unreasonable as a matter of law, especially in view of further allegations in the petition showing that throughout the entire period of 38 weeks he drew wages at the rate of $20 a week and allowed the defendant to draw the same amount, thus treating the partnership agreement as valid and binding and realizing benefits therefrom, and without any notice to the defendant that he would claim otherwise. See 2 Black on Rescission and Cancellation, § 671.

Furthermore, plaintiff had the burden of showing that, not only the representation of value was a material inducement to him to agree to the partnership venture, but also that the rental of $250 a month was excessive in some substantial sum; and there was an absence of any finding on that issue; and also any allegation in plaintiff's pleading as to what was the reasonable rental value of the premises occupied. The maxim, "De minimis non curat lex," has application here. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1; United States Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 724; Id., 101 Tex. 473, 108 S. W. 1165, and cases there cited, 1 Black on Rescission & Cancellation, § 70; 12 R. C. L. p. 297.

From the foregoing, it follows that the judgment of the trial court in favor of plaintiff, appellant here, is reversed, and judgment is here rendered denying him any of the relief prayed for in his petition.

Judgment is also here rendered decreeing that the partnership known as the Marantz Bakery is justly indebted to the appellant Marantz in the sum of $4,140.34, and that said firm is not indebted to appellee in any sum, those being the findings of the jury and which are hereby adopted and approved.

However, it appears from allegations in plaintiff's pleadings that there are certain assets on hand belonging to the partnership, but there is no description or identification of them in the record. His pleadings also contain allegations that defendant has converted some of the assets to his own use and benefit, but there were no allegations identifying the same, nor do we find in the record any evidence on that issue, or any finding of the jury thereon. Accordingly, the case will be remanded to the trial court for the purpose of winding up and settling the partnership affairs, to the end, if proper pleadings therefor be filed, that the court may determine the amount of partnership assets on hand, if any, the amount converted by defendant, if any, and the market value thereof when converted. If the value so found be less than the amount of defendant's debt against the firm, the same should be deducted from the amount owing to defendant by the partnership firm, and a judgment will be entered in favor of de-

fendant against plaintiff for one-half of the balance remaining, and fixing and foreclosing a partnership lien to satisfy the same on the assets of the firm now on hand, if any, with award of execution. If defendant has converted assets equal to or in excess in value of the amount the firm owes him, then judgment shall be rendered denying him any recovery of plaintiff on the cross-action and in favor of plaintiff for such excess, if any; and ·if there be assets then remaining, the same shall be partitioned between the parties in accordance with law in such cases made and provided. But the trial court will determine no other issues than those suggested above.