## MEXICAN COAL & COKE CO. v. RUCKMAN. (No. 6503.)

(Court of Civil Appeals of Texas. San Antonio. March 16, 1921.)

**1. Limitation of actions ⚌167(1)—Expiration of period of limitations against an account extinguished right to recover deposit by creditor to cover excess payment.**

Where plaintiff, the manager of a corporation, on leaving its employment, was paid an amount supposed to be the balance due him on the account between him and the corporation, and, on the corporation auditor's later claiming that there had been a mistake in accounts and an overpayment of $1,041, plaintiff deposited such amount in a bank to protect the company, such deposit was made in contemplation of a speedy statement as to the account, and, when the company failed to render a statement or make claim until after the account had become barred by limitations, the company's right to the deposit was also barred.

**2. Trusts ⚌34(2), 95—Deposit by employee of amount overpaid by employer held not to create trust.**

Where employer claimed to have paid employee, on termination of employment, an amount in excess of that due, and made an agreement with employee pursuant to which employee deposited such amount in a bank in his own name as trustee, upon employer's agreement to make a prompt statement as to employee's account with employer, there was no trust created between employer and employee either expressly, constructively, or by implication of law.

Appeal from District Court, Maverick County; Joseph Jones, Judge.

Consolidated suits by A. J. Ruckman against the First National Bank of Eagle Pass, in which the Mexican Coal & Coke Company intervened; and by the Mexican Coal & Coke Company against A. J. Ruckman. Judgment for A. J. Ruckman, and the Mexican Coal & Coke Company appeals. Affirmed.

Sanford & Wright, of Eagle Pass, for appellant.

Douglas, Carter & Black, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee against the First National Bank of Eagle Pass to recover $1,041.66, being an amount deposited by appellee. Appellant intervened in the suit, claiming the fund. Appellant also filed an independent suit in the same court against appellee to recover a sum of money, and applied for and obtained a writ of garnishment against the First National Bank. The causes of action were consolidated by agreement. Appellee filed a plea of limitations to the claim of appellant, and upon a trial, without a jury, judgment was rendered in favor of appellee for the sum of $1,041.66, with interest.

The facts show that on March 31, 1917, appellee, who had for several years been the manager of the interests of appellant, terminated his relations therewith and demanded and received the amount of appellant's indebtedness to him. The amount was paid to him by Valdez, the bookkeeper of appellant. Afterwards, the auditor of appellant claimed that a mistake had been made and that $1,041.66 more than was due appellee had been paid to him. Appellee agreed with him that the former would deposit the amount, in order to protect the company, within ten days. Appellee drew a check on his account in the First National Bank for $1,041.66, and after indorsing it "J. A. Ruckman, Tse.," placed it in the bank. The statement which was given to appellee on September 19, 1919, was the only one on which appellant demanded settlement. The agreement to make the deposit was entered into on April 17, 1917. On March 22, 1920, suit was instituted by appellee against the bank for the deposit, and

on August 30, 1920, the plea of intervention and the suit against appellee were filed by appellant; over three years having elapsed since the deposit was made.

[1] The agreement between appellant, of date April 17, 1917, contemplated a deposit based on a speedy statement as to appellee's account, and ten days was determined as sufficient time in which to make it. There was no agreement that limitations would not be pleaded against the account. The deposit was proposed by appellee and accepted on the basis of a prompt statement. The money was not transferred to appellant, and if a trust relation arose between appellant and appellee, it could be and was destroyed by limitation brought about through the inexcusable neglect of appellant. When the statement was made the account was barred by limitation, and under the terms of the agreement appellee was justified in not paying it, and could take advantage of it. Limitation ran against an account and not against a trust. Appellee never did admit that appellant had any interest in the $1,041.66 deposit, and when it was made under condition that a speedy statement should be made, neither law nor equity would tolerate the deposit being held for an interminable time. The most feasible and reasonable way in which to terminate is through the law of limitations. If, as claimed by appellant, appellee was indebted to it, he was indebted to it on April 17, 1917, and upon it devolved the burden of preserving the vitality of the indebtedness. Appellant slept on its rights and must abide the consequences. When the account failed it carried all agreements in regard to the deposit with it. The deposit rested on a vital account, and when the account died, all claim on the deposit by appellant died with it. Appellant did not own the deposit and appellee did own it and never relinquished that ownership.

[2] There was no evidence of an express trust. When told that he had drawn more than the amount to which he was entitled, appellee readily agreed that if he had he would correct the mistake. He offered to deposit $1,041.66 of his own money in his own name, as trustee, in the bank. He did not have any money belonging to appellant and never acknowledged that he had. If too much money had been paid him, he was merely a debtor for the excess. No relation of trust or confidence had been created between them, and the deposit was made totally without any consideration coming from appellant to him. There certainly was no express trust created, and neither did one arise constructively or by implication of law.

The judgment is affirmed.