## SOUTHWESTERN DRUG CORPORATION et al. v. CHILNER.

### No. 13756.

Court of Civil Appeals of Texas. Fort Worth.

April 29, 1938.

Fred J. Dudley, of Dallas, for appellants.

Baylor B. Brown and Jack L. Hobson, both of Fort Worth, for appellee.

BROWN, Justice.

Appellee, W. H. Chilner, and one Ed B. Moseley, were partners and owned and operated three drug stores in the city of Fort Worth, known as Pennsylvania Avenue Pharmacy, Park Hill Pharmacy, and Sun Drug Company, and appellee, Chilner, owned personally what was known as Evans Avenue Pharmacy, and the said Moseley owned personally what is known as Moseley's Pharmacy.

The partnership properties being greatly in debt, and being operated at a loss, on April 14, 1931, appellee, Chilner, joined by Moseley, executed an instrument in writing, in which they gave, granted, bargained, conveyed, assigned, transferred, and set over to one J. J. Shackelford, as trustee, all of the fixtures, merchandise, stock, equipment, and accessories in and appertaining to the three drug stores first mentioned, and owned by said partnership. The instrument delivered all such properties, the income and proceeds arising therefrom, "in trust for the benefit of the partnership creditors of W. H. Chilner and Ed B. Moseley, during the time and for the purposes and with the restrictions and limitations hereinafter set forth." The instrument gives the general control and management of the properties to said trustee, "to effect the judicious management of said estate for the benefit of all creditors and the ultimate payment of all indebtedness, and without limiting or modifying said general powers, the trustee is authorized and empowered to perform the following acts and deeds, in respect to said trust property." The instrument requires him to use the income from the trust property before any distribution to creditors, to pay all taxes, assessments, insurance, interest, charges, and costs of administration of the trust, including reasonable compensation to the trustee and reimbursement for his outlays thereunder, and, after paying the expenses of operation, that if any revenue be left, he shall apply same, first, to the payment of all secured indebtedness, and, second, to the payment of all general claims pro rata, according to statements furnished by the creditors and accepted by the trustee. The trustee was specifically empowered to purchase additional merchandise and to do all and everything incident to the operation of the business.

The instrument further provided: "It is mutually agreed hereto by the grantors and the trustee that this trust shall be automatically terminated and the property and business hereinafter described shall automatically revert to the grantors herein upon the payment and satisfaction of all present and subsequent indebtedness to general partnership creditors of said grantors. Upon revocation the trustee shall make full accounting to the grantors and forthwith deliver to them the trust estate. As to all parties dealing with the trustee, such revocation shall be effective only when written revocation or conveyance of title is filed in the county where the property affected is situated."

This further provision is found in the instrument: "It is mutually agreed by and between the grantors and trustee that the sole purpose of this trust agreement is for

the more expedient liquidation of the present indebtedness of the grantors; and that the sole effect of this instrument is to effect a speedy liquidation of all of said accounts to the benefit of the partnership creditors of said grantors."

This instrument makes special mention of the sole ownership of Chilner and Moseley, above mentioned, and recites that the partnership creditors and individual creditors of Moseley and Chilner have agreed that the two last above-described stores shall not be pooled in the trust agreement, subject to certain restrictions and limitations. These restrictions and limitations are to the effect that Chilner and Moseley will furnish to Shackelford, for the benefit and information of the creditors of each, a complete daily report of the sales, purchases, and general progress of the two last-mentioned stores, and that such reports shall be kept by Shackelford, accessible to the creditors.

The instrument further provides that if, at the end of some 3 to 6 months from its date, each or both of the individually owned stores does not make a satisfactory showing to a majority of the creditors of Chilner and Moseley, both partnership and individual creditors, that then and in such event, one or both of such stores shall be automatically conveyed to J. J. Shackelford, trustee, to be operated under the same conditions, provisions, and contingencies set out in the agreement covering the three partnership stores.

This instrument was signed by Chilner and Moseley and Shackelford, the trustee, but no creditors of the partnership firm, or individual creditors of Chilner or Moseley, signed the instrument.

On September 9, 1932, the following instrument was executed by Chilner, the trustee Shackelford, and the creditors of Park Hill Pharmacy, including appellant, Southwestern Drug Corporation, and R. J. Allen & Co., a corporation, which corporation intervened in the instant suit, by and through C. S. Dudley, trustee:

"This agreement made and entered into this 9th day of September, A. D. 1932, between W. H. Chilner, J. J. Shackelford, Trustee, and the undersigned creditors of Park Hill Pharmacy, Witnesseth:

"The contract and trust agreement dated April 14, 1931, between W. H. Chilner and Ed B. Moseley, as partners, and J. J. Shackelford, as Trustee, is hereby cancelled and terminated. The said Ed B. Moseley having heretofore released and conveyed to W. H. Chilner all of his interest in the property described in said above contract, the Pennsylvania Avenue Pharmacy and the Sun Drug Company having been sold, and the proceeds paid to creditors under said trust agreement, the said J. J. Shackelford, Trustee, for and in consideration of the sum of One and No/100 ($1.00) Dollar, and other valuable considerations to him paid by W. H. Chilner, hereby sells, assigns, transfers, delivers and conveys to the said W. H. Chilner all of the goods, wares, merchandise, furniture, fixtures, equipment, accessories, accounts receivable and all other assets of what is known as the Park Hill Pharmacy, located at 2974 Park Hill, in the City of Fort Worth, Tarrant County, Texas.

"The said W. H. Chilner agrees to give his full time and energy in the management and operation of said above described store, to keep the operating expenses thereof at the lowest minimum for practical operation of said store, included in which said expenses of operation shall be a salary to the said W. H. Chilner of not to exceed Twenty-Five and No/100 ($25.00) Dollars per week; to keep the stock of merchandise in said store in good condition and in an amount not less than the amount of merchandise in said store at this time; to pay cash as far as practicable for all new merchandise, and not incur any additional liability on said store which is not absolutely necessary for the reasonable operation thereof; after the payment of operating expenses as above set out, and expenditures for keeping the stock of merchandise in condition and amount as herein stipulated, the remainder of the income from said business shall be distributed pro rata among the present creditors of said store, such distribution to be made at reasonable times and at periods not to exceed three (3) months each after date hereof. The said W. H. Chilner shall furnish to said creditors a monthly report on or about the first of each month hereafter, showing the stock of merchandise on hand, the amount of sales, the amount of collections, the disbursements of funds, and the general condition of said business.

"In consideration of the performance of the above and foregoing agreement, by W. H. Chilner, the undersigned creditors hereby agree to waive interest on the indebtedness owing to them at this time by the said Park Hill Pharmacy, and to withhold any legal action to enforce payment of said in-

debtedness for a period of twelve (12) months from date hereof. Failure of W. H. Chilner to perform the covenants imposed on him herein shall release said creditors from their agreement to waive interest and withhold legal action as herein provided.

"Immediately on execution of this contract by W. H. Chilner, J. J. Shackelford, Trustee, and the present creditors of said store, the said J. J. Shackelford, Trustee, shall deliver said store and all of its assets to the said W. H. Chilner, taking receipt therefor from the said W. H. Chilner, which such receipt of the said W. H. Chilner shall be a full release and discharge of the said J. J. Shackelford under said trust agreement, as to all creditors and interested parties, and thereupon said trust agreement shall immediately terminate.

"Witness our hands in duplicate originals this 9th day of September, A. D. 1932."

Upon the execution of the last above-quoted instrument, appellee, Chilner, took complete charge of the said Park Hill Pharmacy, and operated the same.

Appellant, Southwestern Drug Corporation, brought suit in the district court of Tarrant county against Chilner, seeking to recover on the old accounts and debts owing to it by Moseley and Chilner, because of purchases made from it for the three partnership stores above mentioned, and it seeks to recover on the theory that a trust has been created for its benefit, and the benefit of other creditors of said partnership, and that the trust has been repudiated. It sues for the benefit of all other creditors of the partnership who may see fit to intervene, and likewise sues for a current indebtedness owed by Chilner to it, for goods, wares, and merchandise purchased by him in the conduct and operation of said Park Hill Pharmacy, since Chilner took same over.

R. J. Allen & Co., a corporation, made an assignment to C. S. Dudley, trustee, and said trustee was permitted by the court to intervene in said suit on July 6, 1937.

The amended petition of appellant, Southwestern Drug Corporation, was filed on July 6, 1937, and we find nothing in the record indicating when the original petition was filed, and we treat the suit as having been commenced on such date.

Appellee made appropriate answer to the pleadings of the plaintiff and said intervener, and specifically pleaded the 2 and 4 year statutes of limitation, Vernon's Ann.Civ.St. arts. 5526, 5529, as applied to the claims and demands of plaintiff below and intervener, but acknowledged its indebtedness to said plaintiff on the current account, in the sum of $1,222.96, which sum appellee paid into court.

The cause was tried to the court without a jury, and judgment was rendered denying intervener, C. S. Dudley, trustee, the right of recovery, and denying Southwestern Drug Corporation the right of recovery, excepting as to the admitted current account. The judgment of the trial court holds that the claims and causes of action of plaintiff below and intervener are barred by limitation.

Southwestern Drug Corporation and C. S. Dudley, trustee, have appealed.

■ Appellants inadvertently omitted assignments of error in their brief, and objection having been made to the brief because of such omission, appellants made a motion to be permitted to amend their brief, so as to include the two assignments of error. We grant the motion and will consider the two assignments of error. Appellee objects to the consideration of the two assignments of error, as well as to the two propositions which appear in appellants' brief, and we are inclined to the opinion that the objections are well taken, but in view of what was said by the Supreme Court, in Gavin v. Webb, 128 Tex. 625, 101 S.W.2d 217, concerning the opinion that we delivered in said case, as reported in 99 S.W.2d 372, we overrule the objections to the consideration of the assignments of error and of the propositions.

We believe that the plea of limitations is well taken and was properly sustained by the trial court.

We are unable to see any distinction between the case at bar and the cases cited and discussed in the able opinion by Mr. Justice Denman, on motion for rehearing in the Supreme Court, of Tittle et al. v. Vanleer et al., 89 Tex. 174, 34 S.W. 715, 37 L.R.A. 337, and in the original opinion of the Supreme Court, in said cause, found in 29 S.W. page 1065. We further cite Goldman v. Spann, Tex.Civ.App., 173 S.W. 1014.

■ We believe that the instruments relied upon by appellants created no more than a trust in the nature of a mortgage. We do not believe that the first instrument, executed April 14, 1931, is an assignment for the benefit of creditors, such as is con-

templated by the Texas statute, Vernon's Ann.Civ.St. art. 261 et seq., but, even if such instrument were sufficient as an assignment for the benefit of creditors, it was expressly canceled and terminated on the 9th day of September, 1932, by the instrument bearing such date, which expressly sold, assigned, transferred, delivered, and conveyed to appellee, Chilner, all of the goods, wares, merchandise, furniture, fixtures, equipment, accessories, accounts receivable, and all other assets of Park Hill Pharmacy. Under this instrument, appellee, Chilner, agreed to give his full time in the management and operation of such store, and to keep the expenses of the operation thereof at a minimum, allowing himself not more than $25 per week as a salary, to keep his stock of merchandise in good condition and in an amount not less than that at which he then took the store back, and bound him to pay cash, as far as practicable, for new merchandise, and not to incur any additional liability which was not absolutely necessary for the reasonable operation of the store, and bound Chilner, after the payment of operating expenses and expenditures for keeping the stock of merchandise in condition, to take the remainder of the income from the business and distribute same pro rata among the then creditors of the store, such distribution to be made at reasonable times, not to exceed every 3 months after the date of the instrument so executed. It further bound Chilner to furnish to the creditors a monthly report, showing the stock of merchandise on hand, the amount of sales, of collections, the disbursements of funds, and the general condition of the business. The instrument then provides that in consideration of Chilner performing the agreement undertaken, the creditors who executed such written agreement agreed to waive interest on the debts owing to them by the said pharmacy, and such creditors agreed to withhold any legal action to enforce payment of their respective debts for a period of 12 months from the date of the agreement, and the instrument expressly provides that the failure of Chilner to perform the covenants imposed on him shall release the creditors from their agreement to waive interest and withhold legal action on their claims. This instrument provides that immediately on its execution by Chilner, the trustee, Shackelford, and the present creditors of the store, the trustee, Shackelford, shall deliver the store and all of its assets to Chilner, taking a receipt therefor from Chilner, and that

such receipt should be a full release of Shackelford under the prior trust agreement, as to all creditors and interested parties, and that thereupon the trust agreement shall immediately terminate.

In our opinion, the last-mentioned instrument does not operate so as to completely toll the statute of limitations, but its effect is to suspend the statute during the twelve-month period between September 9, 1932, and September 9, 1933. The very wording of the instrument shows that the creditors who executed the same recognized the fact that they held claims against Chilner which were past due, and they merely agreed to withhold bringing suit thereon for 12 months, provided Chilner would operate the business and pay to them the profits therefrom during the 12-month period, on a pro rata basis. Mexican Coal & Coke Co. v. Ruckman, Tex.Civ.App., 229 S.W. 347.

Appellants rely largely on a letter dated May 14, 1932, addressed to Southwestern Drug Corporation, and signed by W. H. Chilner and J. J. Shackelford, trustee. The letter is as follows:

"Fort Worth, Texas,
"May 14th, 1932.
"Southwestern Drug Corporation
"211 E. Lancaster Street,
"Ft. Worth, Texas.
"Attention: Mr. Saunders.
"Gentlemen:
"In view of the fact that there are some discrepancies between the amount of the Sun Drug Company and Park Hill Pharmacy accounts, as shown by your books, and your accounts, as shown on their books, and for the purpose of eliminating the question of the statute of limitation on open accounts, I, W. H. Chilner, and J. J. Shackelford, Trustee, acting as Trustee, do hereby acknowledge in writing that such discrepancies are known to exist and do hereby agree to waive a question of the statute of limitation on open accounts in connection with the final settlement of said accounts, thereby providing sufficient time for the verification of such discrepancies above referred to.

"It is understood that the said J. J. Shackelford only executes this instrument as Trustee and is not, in any way, personally liable for the accounts herein mentioned."

This letter discloses that there were discrepancies shown by the books of Southwestern Drug Corporation and those of Sun

904

Drug Company and Park Hill Pharmacy, covering the accounts owing by such stores to Southwestern Drug Corporation, and that Chilner simply joined Shackelford, the trustee, in agreeing to waive the question of the statute of limitations on the open accounts, in order to provide sufficient time for verification of the discrepancies referred to. This letter was evidently written for the purpose of giving the creditors and the said trustee an opportunity to arrive at the correct amounts, and, as they expressed it, to verify the discrepancies. This letter does not serve to remove the bar of limitations, in so far as appellee, Chilner, is concerned.

At most it expresses a conditional limitation. Its obvious purpose is to supend the statutes of limitation only until the discrepancies mentioned could be ascertained and removed and the correct amounts arrived at between such creditor and Shackelford. Its operation ended when Shackelford, with the express consent of the creditors, terminated the trust agreement and reconveyed the property to Chilner.

Finding no error, the judgment of the trial court is affirmed.